IN RE ESTATE OF JOHN JOHNSON.
JULIA JOHNSON, EXECUTRIX, APPELLANT.

FILED OCTOBER 16, 1915. No. 19391.

1. **Wills:** PROBATE: NOTICE: PUBLICATION. Under the legislative construction of the term "week," in chapter 222, Laws 1915, the publication of notice of the time and place appointed for the proving of a will, as required by section 1303, Rev. St. 1913, begins with the date of the first publication, and the three weeks do not end until three weeks from and after that date. A hearing had prior to the com-

pletion of such notice·is premature and an order entered thereon at such hearing is void.

2. **Statutes: DEFINITIVE STATUTE: PUBLICATION OF NOTICE: "WEEK."** The construction by the legislature, in chapter 222, Laws 1915, of the term "week," superseded the construction given to such term in *Davis v. Huston*, 15 Neb. 28, *Claypool v. Robb*, 90 Neb. 193, and other cases decided prior to the passage and approval of such chapter, in so far as such cases conflict therewith.

3. ———: ———: ———: ———. Chapter 222, Laws 1915, set out in the opinion, examined, and *held*, not an attempt by the legislature to either repeal or amend any prior statute, but simply a legislative construction of the word "week" as used in the statutes in reference to the publication of legal notices.

APPEAL from the district court for York county: GEORGE F. CORCORAN, JUDGE. *Affirmed.*

*Sandall & Wray,* for appellant.

FAWCETT, J.

John Johnson, a resident of York county, died testate. His will was filed for probate August 27, 1915. On that date the probate court entered an order fixing September 17 as the time for hearing the petition for the probate of the will, and ordered that public notice of such hearing be given by publication of notice in the New Teller, a weekly local newspaper, published in the county, "three weeks successively previous to said day of hearing." The notice was published September 1, 8, and 15. On the day named in the notice, viz., September 17, the following transactions were had, in the order named: The will was admitted to probate; Julia Johnson, widow of the testator, was appointed executrix; her bond was filed and approved and letters testamentary were issued to her; a petition was filed by Joseph Johnson, a son and heir of the decedent, to set aside the probate of the will; his petition was sustained, and the order admitting the will to probate was vacated and set aside and the letters testamentary issued to Mrs. Johnson revoked, on the ground that the only notice given of the application to probate the will was the notice published in the newspaper and upon the dates above

named; notice of appeal to the district court for York county was filed, and the county judge delivered to the clerk of the district court a duly certified transcript of the proceedings had before him. Five days later the order of the county court was affirmed by the district court. From this order Mrs. Johnson appeals.

It will be seen from the history of the case above given that this is a friendly proceeding prosecuted for the purpose of obtaining a construction of section 1303, Rev. St. 1913, in the light of the general construction by the legislature, in chapter 222, Laws 1915, of all statutes of the state which provide for the publication of notices for any number of weeks. The statute relating to the notice to be given of an application for the probate of a will was first enacted in territorial days, and will be found in Rev. St. 1866, ch. 14, sec. 140, p. 85, in exactly the same language as it now appears in section 1303, Rev. St. 1913, viz.: "When any will shall have been delivered into or deposited in any probate court having jurisdiction of the same, such court shall appoint a time and place for proving it, when all concerned may appear and contest the probate of the will, and shall cause public notice thereof to be given by personal service on all persons interested, or by publication under an order of such court, in such newspaper printed in this state as the judge shall direct, three weeks successively, previous to the time appointed, and no will shall be proved until notice shall be given as herein provided."

In *Davis v. Huston*, 15 Neb. 28, in construing the provisions of a statute requiring the publication of notice to nonresident defendants to be made four consecutive weeks in some newspaper, such provisions were held to mean "the same as though the language were that it should be printed or inserted in a weekly newspaper once in each week for four weeks successively, and that the publication is deemed complete upon the distribution of the newspaper containing its fourth successive weekly insertion. The paper will be presumed to have been published on the day of which it

bears date." In all cases involving the provisions of a statute requiring publication of notice for any given number of weeks, the construction above given has been followed where publication was made in a weekly newspaper.

In *Claypool v. Robb*, 90 Neb. 193, *Davis v. Huston, supra,* was followed as to a weekly newspaper, but a different rule was announced when a notice is published in a newspaper having more than one issue during the week. The second paragraph of the syllabus in that case holds: "But, where the notice is published in a paper having more than one issue during the week, insertion of the notice in each of the regular issues during the week is necessary to a complete publication of the notice for that particular week." Under the construction there given, it will be seen that there might, and almost invariably would, occur a difference in the length of time a notice should be published in a weekly newspaper, or in a semi-weekly or daily newspaper. *Claypool v. Robb* was decided November 14, 1911, and was followed on the 28th of the same month by *Smith v. Potter*, 90 Neb. 298.

The legislature of 1915, for the purpose of bringing about uniformity in the construction of statutes of this character, enacted chapter 222, Laws 1915, *supra.* The title to the act reads: "An act to define the word 'week' as used in the statutes of Nebraska in reference to the publication of legal notices, and to declare an emergency." Section 1 provides: "Wherever the statutes of Nebraska provide for the publication of notices any number of weeks, or for any number of weeks, the term 'week' shall be construed to mean either a period of time known as a calendar week beginning on Sunday and ending with Saturday, or any period of seven consecutive days beginning with the date of the first publication of notice: Provided, however, nothing herein contained shall be held to apply to any notice published prior to the taking effect of this act." Section 2 declared that an emergency existed, and that the act should take effect and be in force from and after its passage and approval. It was approved April 17, 1915. We think this act of the legislature is clear and unmistaka-

ble in its terms and relieves the situation of all doubt as to the construction which must be given to statutes of the kind therein referred to, and that section 1303, Rev. St. 1913, is clearly one of the statutes contemplated. Under this construction, put upon the statute by the legislature, we think it is clear that a notice by publication either "during" or "for" any number of weeks, whether the same be in a weekly, semiweekly, triweekly, or daily newspaper, should be for the full number of weeks specified in the statute, and that the time for computing such publication should in any case begin with the date of the first publication of the notice. This being true, the publication of the notice required by section 1303, *supra,* begins with the date of the first publication, and the three weeks do not end until three weeks from and after that date, excluding under the general rule of computation the first day, which, in the present case, the first notice having been published on September 1, would render the hearing premature if had prior to September 22. As section 1303 further provides that "no will shall be proved until notice shall be given as herein provided," the order of probate entered September 17 was without authority of law and was properly vacated.

It has been suggested that the construction above given might have the effect to cloud titles which depend upon wills probated under notices published prior to the enactment of chapter 222, *supra*; but the legislature in that chapter itself guarded against any such contingency by providing that "nothing herein contained shall be held to apply to any notice published prior to the taking effect of this act."

Appellant further urges that, if it was the intention of the legislature of 1915 to repeal section 1303, then chapter 222, *supra,* violates section 11, art. III of the Constitution, which provides: "No law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed." The trouble with this contention is that it has no fact to rest upon. Chapter 222, *supra,* does not assume to either re-

peal or amend section 1303, or any other section of the statute. It is simply a legislative construction of the word "week" as used in the statutes in reference to the publication of legal notices.

. AFFIRMED.

HAMER, J., not sitting.